634 A.2d 459

DUMONT OAKS COMMUNITY ASSOCIATION, INC., et al.

v.

MONTGOMERY COUNTY, Maryland.

No. 21, Sept. Term, 1993.

Court of Appeals of Maryland.

Dec. 21, 1993.

Steven A. Silverman, (Kim M. Czubaruk, Silverman & Schild, all on brief), Silver Spring, for petitioner.

John J. Fisher, Asst. County Atty., H. Christopher Malone, Senior Asst. County Atty., on brief, Rockville, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

RODOWSKY, Judge.

Maryland Code (1974, 1988 Repl.Vol., 1993 Cum.Supp.), §§ 11–122 and 11B–104 of the Real Property Article (RP) prohibit discriminatory, local legislation directed at condominiums and at homeowners' associations. Under § 10B–7 of the

Montgomery County Code (1984, 1993 Supp.) (M.C.C.), that county imposes a charge on common ownership communities to fund certain programs, hereinafter described. The issue in this case is whether the charge authorized by local law violates the prohibitions of public general law.

Montgomery County is a "home rule" county, having adopted a charter pursuant to Maryland Constitution, art. XI–A. Chapter 33 of the Montgomery County Laws of 1990 enacted M.C.C. Chapter 10B, "Common Ownership Communities." Common ownership communities are therein defined to include:

"(1) a development subject to a declaration enforced by a homeowners' association, as those terms are used in state law;

(2) a condominium, as that term is used in state law; and

(3) a cooperative housing project, as that term is used in state law."

§ 10B–2(b). Chapter 10B created a Commission on Common Ownership Communities (the Commission) which is charged with examining conditions in common ownership communities and making recommendations from time to time regarding conditions "which may result in unmet community, resident, or public needs." § 10B–6. Chapter 10B also established an Office of Common Ownership Communities (the Office) within the county's Department of Housing and Community Development. § 10B–4. Tasks of this Office relate to assisting these communities in providing services to their residents, such as developing manuals that describe available government resources and assisting with dispute resolution. § 10B–5.

Each common ownership community in Montgomery County must register annually with the Commission. § 10B–7(a)(1). "The governing body of a homeowners' association, the council of unit owners of a condominium, and the board of directors of a cooperative housing corporation are responsible for compliance with [§ 10B–7(a) ], including the payment of any registration fee." § 10B–7(a)(3). Failure to register constitutes a Class A violation, which carries a maximum $500

fine under § 1–19, and makes the community ineligible for the Office's assistance in dispute resolution. § 10B–7(a)(2).

To fund Commission dispute resolution and technical assistance activities, the County Executive is authorized, by regulation, to set various fees and charges. § 10B–7(b). By regulation, the County Executive set a registration fee of $1.00 per unit for January 1, 1991, through June 30, 1991, and a registration fee of $2.00 per unit for fiscal year 1992. Mont. County Reg. 56–90 AM (1991).

On April 15, 1991, Dumont Oaks Community Association, Inc., together with four (later six) other homeowners' associations and thirteen condominium associations (collectively, Dumont Oaks), requested the Circuit Court for Montgomery County to enter a declaratory judgment invalidating this fee. Dumont Oaks alleged, *inter alia*, that RP §§ 11–122(b) and 11B–104(b) prohibit a county from enacting such a law, and that, as provided in Md. Const. art. XI–A, § 3, these public general laws supersede the locally imposed fee.

RP § 11–122(b) is part of the Maryland Condominium Act, codified as RP Title 11. In Title 11 "condominium" is defined as "property subject to the condominium regime established under this title." § 11–101(e). Section 11–122 provides:

"(a) The provisions of all laws, ordinances, and regulations concerning building codes or zoning shall have full force and effect to the extent that they apply to property which is subjected to a condominium regime and shall be construed and applied with reference to the overall nature and use of the property without regard to the form of ownership. A law, ordinance, or regulation concerning building codes or zoning may not establish any requirement or standard governing the use, location, placement or construction of any land and improvements which are submitted to the provisions of this title, unless the requirement or standard is uniformly applicable to all land and improvements of the same kind or character not submitted to the provisions of this title.

(b) Except as otherwise provided in this title, a county, city, or other jurisdiction may not enact any law, ordinance, or regulation which would impose a burden or restriction on a condominium that is not imposed on all other property of similar character not subjected to a condominium regime. Any such law, ordinance, or regulation, is void. Except as otherwise expressly provided in §§ 11–130, 11–138, 11–139, and 11–140 of this title, the provisions of this title are statewide in their effect. Any law, ordinance, or regulation enacted by a county, city, or other jurisdiction is preempted by the subject and material of this title."

The Maryland Homeowners Association Act is RP Title 11B. Section 11B–104(b) provides:

"A local government may not enact any law, ordinance, or regulation which would:

(1) Impose a burden or restriction on property which is part of a development because it is part of a development."

In Title 11B a development is "property subject to a declaration." § 11B–101(f)(1). A declaration is:

"an instrument ... that creates the authority for a homeowners association to impose on lots, or on the owners or occupants of lots, or on another homeowners association, condominium, or cooperative housing corporation any mandatory fee in connection with the provision of services or otherwise for the benefit of some or all of the lots, the owners or occupants of lots, or the common areas."

§ 11B–101(d)(1).

Concluding, *inter alia*, that RP §§ 11–122(b) and 11B–104(b) did not prohibit the charge, the circuit court granted the county's motion for summary judgment and declared § 10B–7 valid and enforceable. Dumont Oaks appealed.

The Court of Special Appeals affirmed in an unreported opinion. Relying on *Rockville Grosvenor, Inc. v. Montgomery County,* 289 Md. 74, 422 A.2d 353 (1980), the intermediate appellate court held that, although the challenged fee is a burden, it is imposed on property of similar character and is therefore not discriminatory. Rejecting the argument of the

fee challengers that apartment complexes were not subjected to this registration fee, the court concluded that, while both types of housing may be high density, "they are dissimilar in the essential characteristic that is the basis of the County legislation—the form of ownership."

We granted the petition for certiorari of Dumont Oaks. The issue raised in that petition limits the asserted grounds for invalidating the registration fee to violations of RP §§ 11–122(b) and 11B–104 by omitting apartment complexes from the imposition of the fee.

Both Dumont Oaks and Montgomery County invoke *Rockville Grosvenor* in support of their conflicting positions. Before this Court in that case were three aspects of a Montgomery County ordinance regulating the conversion of apartment complexes to condominiums: (1) reimbursement toward relocation expenses of tenants who were displaced; (2) a right of first refusal to tenants' organizations prior to any sale of rental property to a condominium converter; and (3) filing with the county sixty days advance notice of prospective unit sales. *Id.* at 85, 422 A.2d at 360. The issue was whether these features of the local law conflicted with what was then the Horizontal Property Act (HPA), Md.Code (1974, 1980 Cum.Supp.), RP §§ 11–101 through 11–128.

Of particular relevance to the case before us is our holding that the relocation expense reimbursement requirement conflicted with the HPA. *Id.* at 95, 422 A.2d at 364. In so holding, we rejected an argument that HPA § 11–120(b), now RP § 11–122(b), was confined to zoning and building laws. *Id.* at 90, 422 A.2d at 362. Because property owners were required to reimburse tenants who were displaced by "involuntary termination of any tenancy which results from a condominium conversion," *id.* at 93, 422 A.2d at 364, relocation cost reimbursement was a burden on a condominium. *Id.* at 94, 422 A.2d at 364. Because the reimbursement requirement did not apply to conversions of rental units to a cooperative or other use, it imposed a burden on condominiums not imposed on property of similar character. *Id.* at 95, 422 A.2d at 364.

The opinion in *Rockville Grosvenor* traced the HPA to its origins in a report of the Condominium Revision Committee of the Real Property, Planning and Zoning Section of the Maryland State Bar Association. *Id.* at 86, 422 A.2d at 360. Dumont Oaks relies on a portion of that bar association report that reads:

> " 'Some counties are using the popularity of the consumer's interest in condominiums to impose regulations that are different than the ones applicable to apartment buildings. There is no basis in reason or fact for such a distinction when it is remembered that a condominium is merely a different form of ownership of title to the same structure. For instance, the Committee does not believe a county should impose a more stringent fire rating on the walls of a building merely because the unit owners *own* an interest in the units.' "

*Id.* at 86–87, 422 A.2d at 360. The above-quoted comment concerns building and zoning laws. They are the subject of present RP § 11–122(a), formerly § 11–120(a). Discussing that subsection in *Rockville Grosvenor* we said:

> "A special rule is stated in subsection (a). To the extent that laws concerning building and zoning apply to property which is subjected to a condominium regime, such laws have full force and effect, but they are subject to the rule of interpretation for condominiums under which they are 'construed and applied with reference to the overall nature and use of the property without regard to the form of ownership.' "

*Id.* at 91, 422 A.2d at 362–63.

The regulatory scheme and registration charge involved in the instant matter do not concern building and zoning requirements. The registration charge must be tested by the rule of subsection (b) of RP § 11–122. Under that subsection *Rockville Grosvenor* does not require determining whether other property is "of similar character" to that "subjected to a condominium regime" by comparing physical characteristics, for example, whether other property is improved by a building

or complex of buildings designed for multiple family occupancies in separate dwelling units.

The ordinance involved in *Rockville Grosvenor* was a response to the reduction in the inventory of rental housing then available in Montgomery County. The starting point of the regulation there involved was rental housing that would be leaving the rental market. The ordinance, however, required tenant relocation expenses to be reimbursed only if the tenant's unit would no longer be available because of a conversion of the apartment complex to a condominium. Dwelling units leaving the rental market because of conversion to the cooperative housing format, or because the property would be used for commercial purposes, were not covered by the ordinance. *Rockville Grosvenor*, 289 Md. at 95, 422 A.2d at 364. Based on the subject matter of the ordinance involved in *Rockville Grosvenor*, the class comprising "property of similar character" which was involved there was "apartment house[s] or apartment complex[es, whose owners refuse] to renew leases of tenants who desire to continue to rent[.]" *Id.* Within that class, the ordinance regulated only conversions to condominiums. This limitation ran afoul of the statutory prohibition against discrimination in HPA § 11–120(b).

In the case before us the class with which the Montgomery County Council was concerned in enacting Chapter 10B is common ownership communities. The County Council has not focused exclusively on condominiums in addressing the concerns underlying Chapter 10B and its registration charge. Other forms of common ownership communities, including cooperatives and homeowners associations, are included. *See* § 10B–2(b). In the context of Chapter 10B, apartment complexes are not "property of similar character." Technical assistance and dispute resolution for common ownership communities can be viewed as dissimilar to the relations between landlords and tenants. *Compare* M.C.C. Chapter 29, "Landlord–Tenant Relations" *with* M.C.C. Chapter 10B, "Common Ownership Communities." The registration charge does not violate RP § 11–122(b).

The conclusion which we have reached is consistent with an opinion by the Attorney General of Maryland to the County Attorney for Montgomery County, 75 Op.Att'y Gen. 1095 (1990) [Opinion No. 90–031, June 20, 1990]. That opinion addressed Montgomery County Council Bill No. 44–89 which was enacted and codified as M.C.C. Chapter 10B. After discussing the ordinance involved in *Rockville Grosvenor*, the Attorney General opined:

"Here, by contrast, Bill No. 44–89 does not distinguish among types of community ownership properties. Condominiums, cooperatives, and homeowners association[s] are treated alike. To be sure, the dispute resolution mechanism and associated fees will not apply to apartment complexes, which certainly have their share of disputes. But, in our view, the County Council is not precluded by State law from the legislative judgment that landlord-tenant disputes are so different in kind from disputes in a common ownership community that, for this purpose, rental facilities are not 'property of similar character.'"

*Id.* at 1099.

■ Dumont Oaks also argues that the registration charge violates RP § 11B–104(b), a provision of the Maryland Homeowners Association Act. The prohibition in RP Title 11B is phrased differently from that in the Condominium Act. Section 11B–104(b)(1) reads: "A local government may not enact any law ... which would [i]mpose a burden or restriction on property which is part of a development because it is part of a development." The short answer to Dumont Oaks's argument is that homeowners associations are included in Chapter 10B because they are common ownership communities, and not because they are homeowners associations. The regulation of Chapter 10B is concerned with a larger problem, and embraces a larger class, than homeowners associations.

A longer answer to the argument is found in the legislative history of RP § 11B–104(b)(1). The Maryland Homeowners Association Act was introduced in the 1987 session of the General Assembly as Senate Bill 96 and was enacted as

Chapter 321 of the Acts of that year. As introduced, proposed § 11B–104(b)(1) would have provided that "[a] local government may not enact any law ... which would [i]mpose a burden or restriction on property which is part of a development that is not imposed on all other property of a similar character which is not part of a development[.]" Thus, as introduced, the prohibition in the Homeowners Association Act would have been phrased in the same way as the prohibition in the Condominium Act.

Senate Bill 96 was amended, however, at the request of the Maryland Department of State Planning. That agency proposed substitution of the language "because it is part of a development," for the language, "that is not imposed on all other property of a similar character which is not part of a development." The amendment was prompted by a "concern that the [original bill] language is overly broad and may have unintended impacts on [local planning directors'] ability to use certain innovative and important zoning techniques," including particularly, cluster development. Letter from Assistant Secretary, Maryland Department of State Planning to Hon. Anne S. Perkins and Hon. Howard A. Denis (March 5, 1987).

The registration charge under M.C.C. § 10B–7 and Regulation 56–90 AM (1991) does not directly affect the planning or zoning of any common ownership community. Absent any such impact, the purpose of RP § 11B–104(b)(1) is the same as that of RP § 11–122(b). The Attorney General has described RP § 11B–104(b)(1) as a "version of the same prohibition" found in RP § 11–122(b). 75 Op.Att'y Gen. at 1097. Construing RP § 11B–104(b)(1) in accordance with its purpose produces the same construction which we have applied to RP § 11–122(b). "[O]ther property of similar character" is included in M.C.C. Chapter 10B. The registration charge under M.C.C. Chapter 10B does not violate the prohibition of RP § 11B–104(b)(1).

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY THE PETITIONERS.*